UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                             )
                             )
        v.                   ) CR NO. 05-30020-MAP
                             )
EDDIE SANTIAGO,              )
        Defendant            )

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO STRIKE
THE GOVERNMENT'S INFORMATION
(Docket No. 50)

February 8, 2007

PONSOR, D.J.

On July 27, 2006, Defendant was convicted of possessing with intent to distribute fifty grams or more of cocaine base in the form of crack cocaine. Prior to his conviction, the government filed an information pursuant to 21 U.S.C. § 851(a)(1), notifying Defendant of its intent to rely upon three prior felony drug convictions to increase Defendant's minimum mandatory sentence from ten to twenty years. (See Dkt. No. 19, Information 1.) Since filing this information, the government has conceded that only one of these previous offenses -- a February 10, 1999 state-court conviction for possession with intent to distribute a Class B substance --

may serve as a sentencing enhancer. Defendant has filed a motion challenging the validity of this conviction on the grounds that: (1) the government cannot demonstrate beyond a reasonable doubt that he was the individual convicted of this crime; or (2) the conviction "was obtained in violation of the Constitution of the United States." 21 U.S.C. § 851(c)(2).

On January 3 and January 4, 2007, the court heard testimony bearing on the motion from five witnesses. Having now had an opportunity to consider this evidence, the court will allow Defendant's motion to strike the government's information. Although the government satisfied its burden of proving beyond a reasonable doubt that Defendant was the person previously convicted of the state-court offense in question, Defendant has proved by the preponderance of the evidence that this prior conviction was constitutionally impaired.

The background facts are relatively straightforward.[1] Springfield police officer Miseal Rodriguez testified that

---

[1] The court's recitation of these facts is based on notes taken during the two-day hearing. No transcript has been prepared.

on the evening of September 9, 1997, he observed Defendant, with others, conducting a series of what appeared to be illegal drug transactions in front of 69 Clyde Street for a period of approximately one hour. Officer Rodriguez conceded that he made these naked-eye observations after sunset from a location within an adjacent park more than 100 yards away. Nevertheless, he testified that, based on prior contacts, he was certain that Defendant was the individual conducting these apparent drug transactions.

After Officer Rodriguez made his observations, his partner confronted the group at Clyde Street, and Defendant along with others fled into the park. Rodriguez gave chase and eventually apprehended Defendant and placed him under arrest. Defendant had no drugs or money on his person at the time of his arrest, and there was no evidence, other than Rodriguez's observations, linking Defendant to the Clyde Street drug dealing. Following Defendant's arrest, a bag of cocaine was found near the base of a tree in the park, but no evidence connected Defendant to these drugs.[2]

---

[2] The quantity and quality of evidence against Defendant stands in stark contrast to the evidence against the defendant in United States v. Santos, No. 03-30036-MAP, slip op. (D.

During the two-day evidentiary hearing, Defendant and another witness named Luis Ortiz testified that on September 9, 1997, Defendant, Ortiz, and another individual named Angel Rivera did not arrive at 69 Clyde Street until two or three minutes before Defendant's arrest. Thus Defendant could not have been involved in drug dealing for the hour before Rodriguez's partner confronted the group on Clyde Street.³ Defendant also presented the testimony of Julio DeJesus, who was himself arrested and charged along with Defendant for possessing the drugs in question. During the hearing, DeJesus confessed that he alone was responsible for the cocaine found in the park, and he corroborated the testimony of Defendant and Ortiz to the effect that Defendant did not arrive at 69 Clyde Street until minutes before the arrest.

Finally, Defendant offered the testimony of the defense

---

Mass. Sept. 29, 2005). In that case, this court found that an attorney's decision not to subpoena one Roman Correa did not prejudice the defendant since the police found crack on both the defendant and Correa, and Correa initially admitted purchasing the crack from the defendant before offering to exonerate the defendant at trial. Id. at 7-8.

³ Defendant conceded that he and several others in the area fled when Rodriguez's partner approached.

attorney Mickey Harris, who was appointed to represent Defendant following his indictment by a Hampden County Superior Court grand jury. Counsel testified that Defendant initially maintained his innocence and provided the names and addresses of a number of individuals, including Ortiz, who, Defendant asserted, could corroborate his claim that he was innocent of any involvement in the Clyde Street drug dealing.

The docket supplied by the government reveals that Defendant's case was repeatedly set for trial and continued throughout 1998. Each time a trial date approached, Defendant testified that he would attempt to find his alibi witnesses and convince them to accompany him to court.

Although he placed Ortiz and two other individuals on a list of potential witnesses he filed on October 7, 1998 (Dkt. No. 19, Information 9), Counsel conceded that he never subpoenaed, or even spoke to, <u>any</u> witness identified by Defendant or brought by Defendant to court. Counsel also acknowledged that he never filed a motion to suppress the cocaine or sought to obtain discovery to ascertain the exact location from which Officer Rodriguez claimed to have made

his observations.[4]

Given the fact that his files from this era were unavailable, Counsel explained during the hearing before this court that he was not entirely sure why he made these decisions. He did state, however, that he recalled coming to the conclusion that the potential witnesses identified by Defendant were "thugs," lacking in credibility.[5] Although the government argued that Counsel could have taken a view of the location from which Officer Rodriguez made his observations and/or interviewed potential alibi witnesses even after the trial commenced, Counsel did not testify that he intended to do either.

On December 29, 1998, the assistant district attorney assigned to Defendant's case was not available, and the trial scheduled for that day was continued to February 10, 1999. (Dkt. No. 19, Information 5.) Counsel testified that

---

[4] Defendant testified that the officer must have made his observations from substantially more than the 100-150 yards estimated by the officer. Defendant also challenged the officer's characterization of the lighting found in and around the park.

[5] Counsel also indicated that he probably did not file a motion to suppress due to the likelihood that such a motion would be denied.

in the days following this continuance Defendant indicated for the first time his willingness to accept a plea bargain, previously negotiated by Counsel, which would result in a relatively lenient sentence of six months in the house of correction.[6]  In contrast, Defendant testified credibly that the thought of pleading guilty did not occur to him until days before the February trial date, when it became clear that Counsel's deficient pre-trial preparation would inevitably result in Defendant's conviction and the imposition of a three-year minimum mandatory sentence.

On February 10, 1999, Defendant pled guilty and was sentenced to two and one-half years in the house of correction -- six months to be served and the balance suspended.  Defendant now contends that the representation afforded by Counsel in this state-court proceeding fell below the level of effectiveness required by the Sixth Amendment.

In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme

---

[6] Counsel also testified that he advised his client that there was a good chance he would not have to serve the full six months due to an early release program at the jail. As it turned out, Defendant served less than two months in the house of correction.

Court held that the two-part test to establish ineffective assistance of counsel set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), "applies to challenges to guilty pleas." <u>Hill</u>, 474 U.S. at 58; <u>see also</u> <u>United States v. Colon-Torres</u>, 382 F.3d 76, 86 (1st Cir. 2004). Under <u>Hill</u>, a defendant must show that his attorney's performance fell below an objective standard of reasonableness, and "but for counsel's errors," there is "a reasonable probability" that "he would not have pleaded guilty and would have insisted on going to trial." 474 U.S. at 59.

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial.

<u>Id.</u> In this circuit, "[a] claim of ineffective preparation requires . . . specific allegations concerning the facts or defenses which counsel would have uncovered had he been prepared," <u>Blanco v. United States</u>, 995 F.2d 1061 (1st Cir. 1993) (per curiam) (internal quotation marks and citations

-8-

omitted)), and it is the defendant's burden "to demonstrate ineffective assistance by a preponderance of the evidence," Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993) (citations omitted).

Defendant's first argument is that Counsel rendered ineffective assistance in failing to file a motion to suppress the cocaine found in the park. This contention carries no weight. By the time Defendant was arrested in 1997, it was well settled in Massachusetts that individuals "have only a very limited expectation of privacy with respect to an area used routinely by others." Commonwealth v. Welch, 420 Mass. 646, 654 (1995) (citation omitted). Since it is unlikely that any Commonwealth court would have been willing to suppress contraband found in a public park, counsel's decision not to seek suppression is entitled to a "heavy measure of deference." Colon-Torres, 382 F.3d at 86 (quoting Strickland, 466 U.S. at 691); see also United States v. Pellerito, 968 F.2d 1210 (1st Cir. 1992) (per curiam) (refusing to fault counsel's failure to file motion to suppress in absence of "showing that any valid ground of suppression was available").

Counsel's decision not to subpoena or even interview crucial, available alibi witnesses is altogether different. Here, the court finds that the performance of Counsel did fall below an objective standard of reasonableness.[7]

In Dugas v. Coplan, 428 F.3d 317 (1st Cir. 2005), the First Circuit found that an attorney rendered ineffective assistance in failing to thoroughly pursue the possibility that the fire his client was charged with setting was not, in fact, the result of arson. For the First Circuit, the issue was not whether the attorney "should have presented a 'not arson' defense," but "whether the investigation supporting his pursuit of the defense was itself reasonable." Id. at 328 (citation omitted).[8]

Like the attorney in Dugas, Counsel in this case

---

[7] In light of this court's finding that Counsel rendered ineffective assistance in failing to investigate potential alibi witnesses, the court need not consider Defendant's alternative claim that Counsel had an obligation to obtain discovery to ascertain the location from which Officer Rodriguez made his observations.

[8] While this court has found Counsel to be a highly skillful trial lawyer, the "inquiry is not whether [Counsel] is generally competent. Rather, [this court] must decide whether, given the particular facts of this case, he fell below the constitutional standard of competence . . . ." Dugas, 428 F.3d at 328.

"abandoned [his] investigation" of crucial evidence "after having acquired only rudimentary knowledge." Id. (citing Wiggins v. Smith, 539 U.S. 510, 524 (2003)).[9] Because Counsel's investigation of the circumstances surrounding Defendant's arrest was neither thorough nor reasonable, "the presumption of sound trial strategy founders in this case on the rocks of ignorance." White v. Roper, 416 F.3d 728, 732 (8th Cir. 2005); see also Stewart v. Wolfenbarger, 468 F.3d 338, 356 (6th Cir. 2006) (finding "no strategic purpose in failing to investigate . . . a potential favorable witness"); Rolan v. Vaughn, 445 F.3d 671, 682 (3rd Cir. 2006) ("Failure to conduct any pretrial investigation is objectively unreasonable.").

Turning to Hill's second prong and the question of prejudice, the court finds that if Counsel had investigated the exculpatory evidence Luis Ortiz had to offer, Counsel

---

[9] Unlike the attorney in Dugas, who acquired his "rudimentary knowledge" from a "narrow set of sources," which included a visit to the crime scene and interviews with the fire inspector, the state forensic chemist, the private fire investigator, and the electrical fire investigator, 428 F.3d at 322-23, Counsel appears to have relied exclusively on information conveyed by his client and what he read in the police report.

would have changed his recommendation as to the plea since this evidence likely would have changed the outcome of a trial.[10] This assessment is based on the substance of Ortiz's testimony, his credibility, and the less than compelling nature of the Commonwealth's case.

As noted above, the evidence regarding Defendant's whereabouts in the hour preceding his arrest was sharply conflicting. During his testimony on January 3, 2007, Ortiz directly contradicted Officer Rodriguez's claim that he could see Defendant selling drugs more than 100 yards away

---

[10] While the testimony DeJesus gave at the evidentiary hearing certainly would have increased the likelihood of Defendant's acquittal, the court, in evaluating this motion to strike, has not assumed that DeJesus would necessarily have given this testimony at Defendant's trial. Cf. Lema v. United States, 987 F.2d 48, 54 n.6 (1st Cir. 1993) (refusing to assume that an individual who was then awaiting sentencing "would have waived his Fifth Amendment privilege, particularly in support of [the petitioner's] version of the events -- which would have exposed [the individual] as the only culpable participant").
  Significantly, by the time DeJesus testified at the evidentiary hearing before this court, he had already pled guilty and served his time in connection with the September 9, 1997 offense and was in the process of serving a 12-15 year sentence for an unrelated offense. Cf. United States v. Celio, 945 F.2d 180, 184-85 (7th Cir. 1991) (finding nothing improper in prosecutor's suggestion that witness had nothing to lose in exonerating defendant since witness was already in prison).

on Clyde Street during this period. Obviously, if Ortiz made a favorable impression upon the jury, his testimony would have swung the case in Defendant's favor.

Counsel's concern about calling a "thug" as a witness was incorrect as to Ortiz. The twenty-eight year-old landscaper, with no apparent criminal record, was quite credible. Ortiz testified with a clear recollection of events, and his answers to questions were straightforward, concise, and non-evasive. Given the witness' lack of a criminal record and the fact that Counsel never spoke with him, it is difficult to see how Counsel came to regard Ortiz's exculpatory testimony as unhelpful. Ultimately, Ortiz's testimony distinguishes this case from Panzardi-Alvarez v. United States, 879 F.2d 975 (1st Cir. 1989), where the only corroboration of an ineffective preparation claim came from an attorney whose numerous "ethical violations" led the district court to deny his motions to appear pro hac vice. Id. at 978-79.

This case also differs from Panzardi in another important regard. Whereas the prosecution in that case had "substantial evidence" against the defendant, which "very

likely influenced his decision to change his plea," id. at 983 n.5, in this case, the evidence against Santiago was very slim. Officer Rodriguez admitted that his identification relied on making his night-time observations from at least a football field away. Rodriguez also conceded that he found no drugs or money on Defendant when he was arrested, and there was no fingerprint evidence linking Defendant to the drugs Rodriguez did find. As Judge Posner recently observed, the failure "to interview any witnesses or prospective witnesses" becomes "a shocking dereliction of professional duty" in a case where "the state's evidence . . . [i]s far from compelling." Stanley v. Bartley, 465 F.3d 810, 813 (7th Cir. 2006) (Posner, J.).

While the government points to the relatively lenient sentence Defendant received as evidence of Counsel's effectiveness, "advocacy at sentencing does not insulate . . . shortcomings at the plea stage." Dando v. Yukins, 461 F.3d 791, 800 (6th Cir. 2006) (observing that a proper investigation of potential defenses would have given the defendant "a chance to be acquitted altogether").

For the foregoing reasons, Defendant's Motion to Strike

the Government's Information (Docket No. 50) is hereby ALLOWED.  The court concludes that Defendant's February 10, 1999 state-court conviction was obtained in violation of the Sixth Amendment to the Constitution of the United States.  The government is hereby ordered to file a status report by February 23, 2007, informing the court whether it will exercise its right to take an immediate appeal of this ruling pursuant to 21 U.S.C. § 851(d)(2).  If the government does not wish to proceed with an appeal at this time, the clerk will set the matter for sentencing.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge